NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**GARY FISHER,**
*Petitioner,*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2011-3046

---

Petition for review of an arbitrator's decision in FMCS case no. 101229-52599-6 by Susan R. Meredith.

---

Decided:  November 14, 2011

---

M. JEFFERSON EUCHLER, Law Office of M. Jefferson Euchler, of Virginia Beach, Virginia, for petitioner.

ELIZABETH M. HOSFORD, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

---

Before PROST, SCHALL, and MOORE, *Circuit Judges*.

SCHALL, *Circuit Judge*.

## DECISION

Gary Fisher petitions for review of the decision of an arbitrator sustaining his removal by the Department of Veterans Affairs ("VA") for unacceptable performance. *Dep't of Veteran Affairs v. Am. Fed'n of Gov't Employees, Local 3698*, FMCS No. 101229-52599-6 (2010) (Meredith, Arb.). We *affirm*.

## DISCUSSION

### I.

The pertinent facts are not in dispute. At the time of his removal, Mr. Fisher was employed by the VA at its Veterans Service Center in Manchester, New Hampshire, as a GS-12 Rating Veterans Service Representative ("Rating Specialist"). Ratings Specialists prepare ratings decisions in connection with veterans' claims for benefits.

On May 27, 2009, Bruce Keller, a supervisor at the Manchester Service Center, met with Mr. Fisher to discuss his performance. Mr. Keller informed Mr. Fisher that the quality of his work had fallen below the minimum acceptable level of performance for a GS-12 Rating Specialist. That minimum acceptable level of performance was an average accuracy rate of 85 percent or better in ratings decisions for the evaluation year.

On June 29, 2009, Mr. Keller provided Mr. Fisher with a memorandum stating that he was being placed on a performance improvement plan ("PIP") because his performance continued to be unacceptable. Under the terms of the PIP, which went into effect on July 1, 2009, Mr. Fisher was given until September 29, 2009, to improve his performance. The PIP stated that, during the

July – September period, Mr. Fisher would be required to "show continuous improvement toward the achievement of the minimally acceptable level of rating accuracy" and that, "[b]y the end of the fiscal year (September 30, 2009)," he "must have achieved a cumulative accuracy rate of 85 % or better." PIP ¶ 3.

On September 30, 2009, Veterans Service Center Manager Sandy Hill presented Mr. Fisher with a notice of proposed removal. Ms. Hill informed Mr. Fisher in the notice that he had failed to meet the requirements of the PIP. Specifically, Ms. Hill stated that although his Rating Specialist position required an average accuracy rate of 85 percent or better throughout the year, based upon a review of his August cases, Mr. Fisher had achieved only a 70 percent cumulative average. Ms. Hill further stated that, over the period of the PIP, Mr. Fisher's cumulative average had declined from 82.6 percent to 70 percent. Subsequently, on October 30, 2009, the VA's Regional Office Director notified Mr. Fisher that he was being removed from his position as a Rating Specialist for failure to meet the requirements of his position for accuracy in rating decisions.

Mr. Fisher's union, the American Federation of Government Employees ("AFGE"), timely commenced grievance proceedings concerning his removal. In due course, after the VA denied the grievance, AFGE invoked arbitration on Mr. Fisher's behalf. In her final decision, the arbitrator sustained the VA's removal. This appeal followed.

## II.

We have jurisdiction over Mr. Fisher's appeal pursuant to 5 U.S.C. §§ 7121(f) and 7703. We review an arbitrator's decision under the same standard that would be applied if the matter had been decided by the Merit

Systems Protection Board. 5 U.S.C. § 7121(f). Our scope of review in such cases is limited. Specifically, we must affirm the arbitrator's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Mr. Fisher raises two arguments on appeal. We address them in turn.

A.

Mr. Fisher does not dispute that he failed to meet the 85 percent cumulative accuracy rate that the VA applied to GS-12 Rating Specialists and that was set forth in the PIP. Rather, he contends that the performance standard to which he was held under the PIP was unreasonable. This argument has two aspects to it. First, Mr. Fisher argues that it was unreasonable for the PIP to require, as it did, that by September 30, 2009, he attain a cumulative accuracy rate of 85 percent or better. He reasons that "[t]hus an employee who is presumably struggling will be required during their PIP to exceed their standard by enough to make up for the previous nine months." Pet'r's Br. 8. Under these circumstances, Mr. Fisher states, "an employee is penalized for their workload prior to any of the remedial actions being taken that are supposed to improve their performance." *Id.* at 9. Second, Mr. Fisher argues that the 85 percent accuracy standard was *per se* unreasonable. *Id.* at 13-15.

At the outset, before addressing Mr. Fisher's challenge to the 85 percent accuracy standard, it is to be remembered that the PIP also required Mr. Fisher to show continuous improvement toward achievement of the minimally acceptable level of rating accuracy for GS-12 Rating Specialists. As far as that requirement is con-

cerned, it is undisputed that in July of 2009 Mr. Fisher's cumulative annual accuracy rate was 78.18 percent, in August it was 75.28 percent, and by the end of September it had fallen to 70 percent. In fact, during August of 2009, Mr. Fisher's rating accuracy was only 50 percent. Thus, during the period of the PIP, not only did Mr. Fisher fail to demonstrate improvement in his performance, but his level of performance declined.

Turning to the requirement of an 85 percent accuracy rate, we do not agree that the PIP held Mr. Fisher to an unreasonable standard. While it is true that an employee who is placed on a PIP and performs satisfactorily during the PIP may not be penalized for unacceptable perform-ance occurring prior to the PIP, *see James v. Veterans Admin.*, 27 M.S.P.R. 124, 127 (1985), that proposition does not apply in this case. As seen, Mr. Fisher's per-formance was not satisfactory during the PIP. Thus, this case does not present the situation of an employee whose work improves during a PIP but who still is unable to meet an overall yearly performance standard because of work deficiencies prior to the PIP. In any event, we are not prepared to say on the record before us that it was unreasonable for the VA to require Mr. Fisher to perform at the level required for his position. As the government points out, *see* Resp't's Br. 24, Mr. Fisher could have achieved an 85 percent cumulative accuracy rate if, during the period of the PIP, he had accurately rated 27 of the 30 cases he reviewed. Moreover, Mr. Fisher has failed to demonstrate that a cumulative rating accuracy rate of 85 percent was unreasonable for GS-12 Rating Special-ists.

### B.

Mr. Fisher's second argument on appeal is that during the PIP (and especially its first month), he was given

inadequate supervisory assistance and guidance. Pet'r's Br. 9. We reject this argument. The record reveals that during the first month of the PIP, Mr. Fisher was out of the office for much of the time on annual leave, sick leave, or authorized leave, or on account of his work schedule. As a result, during July, his availability rate – the time he was available to rate cases – was only 25.74 percent. The record also reveals that, as the arbitrator found, Ms. Hill made repeated attempts after that first month to review with Mr. Fisher his work. However, Mr. Fisher was uncooperative and rebuffed those attempts.

## III.

For the foregoing reasons, the decision of the arbitrator is affirmed.

Each party shall bear its own costs.

*AFFIRMED*